SCANNED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
Portland Division

| | |
|---|---|
| UNITED STATES OF AMERICA  )<br>*Ex rel.*  )<br>William Verrinder  )<br>  )<br>  )<br>Plaintiffs,  )<br>  )<br>  )<br>  )<br>  )<br>v.  )<br>  )<br>Wal-Mart Corporation  )<br>702 SW 8th Street  )<br>Bentonville, AR. 72716  )<br>  )<br>Sears Holding Corporation,  )<br>and Kmart  )<br>3333 Beverly Road  )<br>Hoffman Estates, IL 60179  )<br>And  )<br>Rite-Aid Corporation  )<br>30 Hunter Lane  )<br>Camp Hill, PA. 17011  )<br>Defendants.  ) | Civil Action No. 2:13-cv-130 NT<br><br>**FILED UNDER SEAL<br>PURSUANT TO 31 U.S.C.<br>§ 3730 (b)(2)**<br><br>**DO NOT PLACE IN PRESS BOX<br>DO NOT ENTER ON PACER** |

FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR

JURY TRIAL

**Introduction**

1.      On behalf of the United States of America, William Verrinder, relator, brings

this action against defendants for treble damages and civil penalties arising from the

defendants' false statements and false claims in violation of the False Claims Act, 31

U.S.C. §§ 3729 *et seq*.  This action is easy to understand: for monetary gain, Wal-Mart

executive Michael Nardozzi has returned the risk of consuming prescription

medication to level it was at before passage of the Food, Drug, and Cosmetic Act of

1938. Each defendant submits false claims to Medicare and/or Medicaid, in

violation of 31 U.S.C. §§ 3729 *et seq*, by dispensing and billing for prescription drugs

that will expire before the expiration date printed on the prescription vial that is

purchased by the patient, misleading patients into believing that their prescription

medications are in-date and safe to consume when in-fact they are expired (the

length of time that a drug has been expired depends on several factors and the

details are given below). In addition to expiring before the expiration date printed

on the prescription vial, many drugs will expire before the patient can actually

consume the medication according to his or her physician's directions. The Food,

Drug, and Cosmetic Act (FDCA) of 1938 as amended, 21 U.S.C. § 301 et seq.,

prohibits misbranding on prescription labels and adulteration of prescription

medications. The United States Supreme Court has held that the FDCA applies to

retail pharmacies, such as the defendants. Each defendant prints false expiration

dates of drugs on prescription labels, constituting both misbranding and

adulteration (the drug expires and hence deteriorates before the expiration date on

the label). State laws also prohibit misbranding on prescription labels and

adulteration of prescription medications. The defendants' also violate the False

Claims Act 31 U.S.C. §§ 3729-3733 on two other separate grounds. First, defendants

are billing for services never received: Prescription Drug Plan (PDP) Sponsors and

Medicaid contractors pay pharmacies a service fee based on how many days supply

of medication a patient receives; for example, they pay one fee when a pharmacy

dispenses a 30 day supply of medication, a different fee for a 60 day supply of

medication, and yet another different fee when a pharmacy dispenses a 90 day supply of medication (these fees are separate from the cost of the medication). By dispensing medication that expires before the patient can actually use it, the pharmacy did not provide the service of dispensing a 90 days supply of medication. Second, defendants are billing for goods or products never received: when the medication expires before the expiration date or before the patient can actually use the medication then the pharmacy has not provided the goods or products for which it has billed Medicare and/or Medicaid. To be exact, the defendants bill private companies that have business arrangements with Medicare Part B, Medicare Part D, and/or state Medicaid programs; and these companies in turn bill the United States Federal government for the prescriptions that they paid for to the defendant pharmacies.

2.     Pursuant to 31 U.S.C. § 3730(b)(2), the relator has submitted to the Attorney General of the United States of America and the United States Attorney for the District of Massachusetts a statement of all material evidence and information related to the complaint. The written disclosure statement is supported by material evidence known to relator at filing establishing the existence of each defendant's separate false claims.

**Jurisdiction and Venue**

3.      This action arises from the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.  This

Federal Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and

3730(b).  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §

1345.  Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C.

§ 1367.

4.      Wal-Mart Corporation conducts pharmacy business in this District.  Venue is

proper in this District pursuant to 31 U.S.C. § 3732(a) because the acts proscribed

by 31 U.S.C. §§ 3729 *et seq*. and complained of in this complaint occurred in this

District.

**Parties**

5.      William Verrinder, the relator in this case, is a citizen of the United States and

a resident of the State of Maine.  From March of 2012 to January 8, 2013 relator

worked for Sears Holding Corporation as a pharmacist.  From November 2008 to

January 2012 relator worked as a pharmacist at Wal-Mart Corporation.

6.      The Relator is an original source of this information within the meaning of 31

U.S.C. § 3730(e)(4)(b), but states that to his knowledge the information included

here concerning defendants' False Claims Act violations has not been publicly

disclosed.  The relator does not base his knowledge on any criminal, civil or

administrative hearing, in a congressional administrative, or Government

Accounting Office report, hearing, audit, or investigation, or from the news media.

The relator has direct and independent knowledge of the information on which the allegations are based. Relator has voluntarily provided the information to the Government before filing this action (under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*), which is based on the information. Relator, by phone, spoke with an agent of the Federal Bureau of Investigation's office in Boston, MA. on April 5th, 2013; relator detailed to the agent how Wal-Mart Stores Inc., Kmart, and Rite-Aid Corporation and its subsidiaries submit false claims for payment for dispensing prescription medications that expired before the expiration date printed on the prescription container and/or expired before patients could use the medication according to their doctor's instructions. Relator also by phone spoke with an attorney in the Assistant United States Attorney General office for Vermont on April 5th, 2013; again, relator detailed how Wal-Mart Stores Inc., Kmart, and Rite-Aid Corporation and its subsidiaries submit false claims for payment for dispensing prescription medications that expired before the expiration date printed on the prescription label and/or expired before patients could use the medication according to their doctor's instructions.

7.     The United States of America Government (U.S.A.) funds Medicare and Medicaid through the Department of Health and Human Services (HHS). Congress passed the Social Security Act of 1935 to provide for people over a certain age. Later Congress amended the Social Security Act of 1935 to include Title XVIII Health Insurance For the Aged and Disabled, 42 U.S.C. §§ 1395 – 1395ccc (Medicare) and to include 42 U.S.C. § 1396 et seq. (Medicaid). Through Medicare and Medicaid, the

U.S.A. federal government ultimately pays for prescriptions filled at the defendants'

pharmacies; this happens through several mechanisms. The DHS contracts with

Prescription Drug Plan (PDP) Sponsors to administer the Medicare Part D Voluntary

Prescription Drug Benefit Program. Defendants submit claims to PDP Sponsors to

receive payment for dispensing prescriptions for Medicare Part D enrollees. HHS

contracts with private contractors to administer Medicare Part B Supplementary

Medical Insurance Benefits for the Aged and Disabled. Defendants submit claims to

the private contractors (that handle Medicare Part B claims originating from retail

pharmacies) to receive payment for dispensing prescriptions for Medicare Part B

enrollees. DHS contracts with state governments to administer state Medicaid

programs. State governments generally contract with private companies to process

Medicaid claims. Defendants submit claims to these Medicaid contractors (private

companies) to receive payment for dispensing prescriptions for Medicaid enrollees.


8.      Wal-Mart Stores Inc. (hereafter "Wal-Mart") operates thousands of

pharmacies across the United States. Wal-Mart employs pharmacy technicians and

pharmacists to operate its pharmacies. These pharmacy technicians and/or

pharmacists submit claims to Medicare PDP Sponsors for dispensing prescriptions

for Medicare Part D enrollees. These pharmacy technicians and pharmacists also

submit claims to private contractors (that have in turn contracted with HHS to

process claims for Medicare Part B enrollees (hereafter "Medicare Part B

contractors")) for dispensing prescriptions to Medicare Part B enrollees. Further,

Wal-Mart's pharmacy technicians and pharmacists submit claims to private

contractors (that have in turn contracted with state governments to process claims for Medicaid enrollees) for dispensing prescriptions to Medicaid enrollees.

9.      Sears Holding Corporation ("Sears Holding" hereafter) operates several hundred pharmacies across various states.  These pharmacies operate under the name of Kmart (Kmart is a wholly owned subsidiary of Sears Holding).  Kmart employs pharmacy technicians and pharmacists to operate its pharmacies.  These pharmacy technicians and pharmacists submit claims to PDP Sponsors, Medicare Part B contractors, and Medicaid contractors for dispensing prescriptions to Medicaid or Medicare enrollees.

10.     Rite-Aid Corporation (Rite-Aid) operates as a shell corporation that owns and operates other companies that operate retail pharmacies.  For example, Rite-Aid Corporation owns and operates Rite-Aid of New York and Rite-Aid of North Carolina; this pattern exists in other states where Rite-Aid Corporation conducts business.  These separate companies do not have their own CEO, CFO, or COO; all management decisions are controlled through Rite-Aid Corporation.  Rite-Aid's subsidiaries employ pharmacy technicians and pharmacists to operate their pharmacies.  These technicians and pharmacists submit claims to PDP Sponsors, Medicare Part B contractors, and Medicaid contractors for dispensing prescriptions to Medicaid enrollees or Medicare enrollees.

**Facts Relating to Wal-Mart Corporation**

11.     Expiration dates are critical to prescription medications.  Prescription medications that are expired do not provide therapeutic value to patients and they may actually harm patients.  One purpose of the Food, Drug, and Cosmetic Act of 1938, as amended, is to ensure that patients receive safe and effective medications at the moment of their use.  The definition of "effective medications" means drugs that are not expired when patients use them, which means the correct expiration date must be printed on the prescription label.  Because of the crucial nature of expiration dates Medicare and Medicaid require pharmacies to submit expiration dates for claims to be paid: no expiration date equals no paid claim.  Hence, expiration dates are material to submitting claims to Medicare or Medicaid.  When the U.S.A. Government pays for prescription medications that expire before patients can use them and/or before the expiration date printed on the prescription label, then it has been defrauded by paying for products not received and services not rendered.

12.     Wal-Mart fills approximately 500 million prescriptions per year.  According to IMS Health, in 2010, approximately 30% of all prescriptions filled were billed to either Medicare Part D or Medicaid.  One can infer that Wal-Mart bills about 150 million prescriptions per year to either Medicare Part D or Medicaid.  The total number billed to Medicare is even higher because this does not account for Medicare Part B.  On average, at each Wal-Mart pharmacy about 15% of the manufacturers' stock bottles expire within a year.

13.     Wal-Mart receives money originating from the United States Government as payment for dispensing prescriptions for patients who have Medicare Part B and/or Medicare Part D and/or Medicaid.  Pharmacy technicians and pharmacists who work for Wal-Mart Corporation have authority to bill Medicare Part B and/or Medicare Part D and/or Medicaid for patients who are eligible to receive Medicare Part B and/or Medicare Part D and/or Medicaid.

14.     Wal-Mart Corporation has developed its own proprietary pharmacy software that processes prescriptions and submits claims for payment under Medicare Part B and/or Medicare Part D and/or state Medicaid programs.  Wal-Mart Corporation calls this software "Connexus," ("Connects Us to our patients").  Connexus automatically submits claims to Medicaid and Medicare for 1) "auto-refills" (prescriptions that are due to be filled each morning) and 2) refills entered by patients (by phone or website) while automatically assigning a one year expiration date from the date filled for these refill prescriptions.  Michael Nardozzi knows of and has approved of Connexus automatically entering an expiration date of one year for prescription medications dispensed from Wal-Mart pharmacies, even compounds that typically expire in a few days to weeks still get the one year expiration date automatically entered.  Connexus submits these refills without any human being checking the validity of the expiration date against manufacturer stock bottles on the shelf to be sure they match and to shorten expiration dates submitted to Medicaid and Medicare when the manufacturer's stock bottle expires in less than

one year.  Michael Nardozzi, Abdul Kader, and Lyndsey Cyr have approved the

submission of claims to Medicare and Medicaid without any human being checking

the submitted expiration dates against the expiration dates of manufacturers' stock

bottles to ensure that correct expiration dates are submitted.  This speeds filling

prescriptions, increases the number of prescriptions that each pharmacy can fill and

sell each day, increases sales, and increases bonus checks for managers such as

Michael Nardozzi, Abdul Kader, and Lyndsey Cyr.  At no time in the process of filling

refill prescriptions, after or before they have been billed, does Wal-Mart's filling

system allow pharmacy technicians to check or correct expiration dates.  Also,

pharmacists are monitored for how many times they enter the screen which would

allow them to correct expiration dates, if they knew it was wrong, however, Wal-

Mart's explicit policy, approved by Michael Nardozzi and enforced by Abdul Kader

and Lyndsey Cyr, expressly prohibits pharmacy technicians from showing

pharmacists the stock bottles for tablets or capsules that were used to fill a

prescription.  In other words, at no time in the process, are pharmacists' specifically

required to check the expiration date: this would slow dispensing prescriptions,

decrease the amount of prescriptions that a pharmacy could fill, decrease sales, and,

therefore, decrease bonus checks: At Wal-Mart, everything revolves around the

annual bonus check.  The only time that pharmacists see the stock bottle is when a

new drug has just entered the market and the drug's picture has not yet been

uploaded to a database that shows the picture of the tablet or capsule to

pharmacists when they check the prescription.  In other words, for any type of refill,

Wal-Mart's strictly controlled filling system does not have a step for pharmacy

technicians or pharmacists to check the expiration date of the prescription. Wal-Mart does time each step of the filling process and reprimand pharmacy technicians or pharmacists who take too long to complete any of the steps. (Pharmacists see the manufacturer's container for prescriptions for eye-drops, ear-drops, creams ointments, liquids, and injections.)

15.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart executives, including Michael Nardozzi, Abdul Kader, Lyndsey Cyr, and Wal-Mart's attorneys through the use of "Connexus," to increase their own annual bonus checks, violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by programming and allowing Connexus to automatically submit false claims for payment, without human intervention, 1) for "auto-refill" prescriptions and 2) for refill prescriptions entered directly by patients using a phone or Wal-Mart's pharmacy website to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence, the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these executives knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy,

hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended; Connexus does not have a built-in step for pharmacy technicians or pharmacists to correct incorrect expiration dates. Medicare and Medicaid require that pharmacies submit claims to comply with the Food, Drug, and Cosmetic Act of 1938 as amended. Wal-Mart, since the roll-out of Connexus, has a national and standardized system for filling prescriptions that must be followed. Wal-Mart has programmed Connexus in such a way that for any type of refill prescription the expiration date is never checked by a pharmacist or technician against the date entered by Connexus. Wal-Mart's prescription records indicate whether a prescription was auto-refilled by Connexus, refilled by a technician or pharmacist, or entered by a customer from home. Relator has worked at over a dozen different Wal-Mart pharmacies and Wal-Mart owned pharmacies in three different states. Further, for new prescriptions, Connexus also automatically enters an expiration date of one year and Wal-Mart does not have any steps requiring technicians or pharmacists to verify the accuracy of these claims.

16. Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP

Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended.

17.     Wal-Mart pharmacists who have filled dispensed medications with expiration dates that expired before the date on the label and submitted claims for these prescriptions to Medicaid or Medicare include Jeffrey Michael Jurek, Darnell (Donnie) Williams, Heather Tucker, and Carol Cross.

18.     Six different forms can be used to identify prescriptions that were filled with medications that expired in less than a year of the date they were filled but labeled with the automatic one-year expiration date.  First, nationally, Wal-Mart's reverse distributor and Wal-Mart require pharmacists to create an invoice for drugs that expire within "3 months" (75 days or less in actuality) that are returned each month

to the reverse distributor. This invoice documents the expiration date and national drug code and quantity of the prescription medication that was returned and the size of the manufacturers stock bottle (100 count, 500 count, 1000 count, etc). Second, Connexus has a search feature that allows you to search each national drug code by typing in the NDC number you can identify all of the prescriptions filled for that particular drug, including the date and quantity dispensed. Combining these forms together allows you to determine prescription numbers that were filled with drugs that expired within a year but incorrectly labeled with a one-year expiration date. Additionally, three other forms can be used to identify these types of prescriptions: 1) manufacturers' invoices, as required by law, that show what drug, how much, and lot numbers that were shipped to Wal-Mart's distribution centers, and 2) invoices from Wal-Mart's distribution centers to pharmacies showing which drugs were sent to which pharmacies and the quantity, and 3) each pharmacy's form (two per year per pharmacy) documenting drugs that expired within 6 months and were sent back to a Wal-Mart distribution center to be sent out immediately to another Wal-Mart pharmacy, and 4) prescription numbers identified from the NDC usage report can be used to access the entire prescription record allowing you to determine whether the prescription was billed to Medicare or Medicaid and compare the expiration dates. This works because Wal-Mart practices just in time inventory management; it evenly matches supply with demand. Wal-Mart has more sophisticated analytics tracking the movement of prescription drugs that also may be used to identify which prescriptions were filled with medication that expired within a year but labeled with a one-year expiration date.

14

19.     Per Michael Nardozzi's instructions, on the 15th of every month, requires

pharmacy technicians and pharmacists to examine each and every manufacturers

stock bottle of drugs and remove from drug shelves all medications that expire

within "3 months". Some pharmacies may be a full week or more behind schedule.

Note the time-line. Note the definition of "3 months." For example, on January 15,

pharmacy technicians and pharmacists remove drugs that expire on or before

March 31. From January 15 to March 31, there are not 90 days or 3 months - but it

is Michael Nardozzi's policy to count that time as "90 days" or "3 months." To add

more detail, on, say, January 14th a patient purchases a 90 day supply of

prescription medication that expires on March 31, that patient will end up

consuming about two weeks of expired prescription medications. Many other

situations exist in which a patient could end up taking expired drugs dispensed by a

Wal-Mart pharmacy, despite the label indicating that the medication is in-date. To

give just one example, many elderly patients purchase a 90 days supply of

medication as encouraged by their PDP. Elderly patients often spend a few months

or more in a nursing home to recover from surgery or other illness and then return

to their own home. Many of these patients already have a several months supply of

medication purchased from a Wal-Mart pharmacy, but nursing homes do not allow

patients to bring these medications to their nursing home so the patient leaves the

medication at home and uses it upon leaving the nursing home; suppose the

patient's medication expired six months from the date of dispensing but the label

says one year and the patient bought the medication a month before a five month

15

stay in a nursing home then the patient would consume two full months of expired medication after leaving the nursing home.  Or, the patient may experience a heart attack or stroke that they would not have had had they had good prescription medication- now Medicare or Medicaid has to pay for the medical care to treat the heart attack or stroke that could have been prevented in the first place had the patient had good medication.  Many other possibilities exist where a patient could end up taking expired medication.

20.     Drugs that expire in "90 days" or "3 months" (actually the last day of two months forward or actually about 75 days most of the time) from the 15th of each month are then sent to a reverse distributor.  Manufacturers generally print expiration dates in fine print.  Twice a year, Wal-Mart Corporation also requires its pharmacy technicians and pharmacists to identify drugs that expire within 6 months so they can be sent to another Wal-Mart pharmacy that sells more of those particular drugs.  In other words, Wal-Mart's pharmacy technicians and pharmacists know full well that the pharmacy has drugs on the shelf that expire within a year. Wal-Mart executives, such as Michael Nardozzi, Abdul Kader, and Lyndsy Cyr receive reports detailing the dollar amount of inventory expiring within 90 days that was returned to the reverse distributor.  Further, every six months, they receive reports detailing the dollar amount of inventory expiring within 6 months that was returned to Wal-Mart's private warehouse for redistribution to other Wal-Mart pharmacies that have patients who consume those medications.

21.    Wal-Mart's pharmacy technicians and pharmacists type prescription data into Wal-Mart's proprietary pharmacy software when a patient wants a new prescription filled. This data includes the expiration date. However on new prescriptions, Connexus has already entered an expiration date of one year automatically. Wal-Mart does not have any policy in place that requires pharmacy technicians or pharmacists to check expiration dates of medications while typing a new prescription or at any point while a new prescription is being filled and dispensed. The emphasis is solely on speed.

22.    Refills on prescriptions that have already been previously filled can enter into the filling que in one of three ways. A pharmacy technician or pharmacist can enter refills through a patient's profile in Connexus and press the appropriate icon so the prescription enters the filling process – this first way does not have a step for pharmacists or pharmacy technicians to check and change the expiration date before the prescription label is printed nor does it bring up an option on the pharmacist's visual verify screen for the pharmacist to check the expiration date before finalizing the prescription. Second, patients can enter refills from home by phone or internet connection, which directly sends them into the filling que without giving anyone a chance to check the expiration date. Third, as noted above, some prescriptions are set on an "autofill" program whereby the prescription is automatically filled by Connexus at specified intervals – again this option does not give anyone the chance to change the expiration date before the prescription label is

printed and does not give the pharmacist the chance to check the expiration during visual verify, the last step in filling a prescription.

23.     Of utmost importance, on the pharmacist's visual verify screen of Connexus the expiration date does not appear; additionally, the expiration date does not appear of the "four-point" screen, the only other screen that a pharmacist typically sees while dispensing a prescription.  The only way to change the expiration date, if a pharmacist thought of it, is to press the "F9" function key to enter another screen. However, it is official corporate policy for pharmacists not to enter this screen (it would slow the process down too much and jeopardize profits and bonus checks) where they could change the expiration date.  Wal-Mart Corporation tracks the number of times that a pharmacist uses the "F9" key to correct errors on prescriptions.  This data is compiled for each store and each district.  Pharmacists who use the "F9" key too much are spoken to and warned.

24.     A little context, some may think that Wal-Mart's executives cannot possibly be that strict about time.  Michael Nardozzi, Abdul Kader, and Lyndsey Cyr allow pharmacists a grand total of just over 60 seconds to complete all pharmacist tasks associated with visual verify and four-point.  During these two steps, pharmacists must check for many different types of interactions with a patient's other medications, in addition to reading the prescription and making sure the pharmacy technician typed and filled it correctly.  If you have a person who takes 10 different medications and brings a new prescription in for a new drug, then the pharmacist

gets less than 3 seconds on average to evaluate each interaction, for all practical purposes, its meaningless for the vast majority of patients.

**Facts Relating to Sears Holding Corporation and Kmart**

25.     Kmart's pharmacy technicians and/or pharmacists submit claims to: 1) PDP Sponsors to receive payment for dispensing prescriptions for Medicare Part D enrollees, and/or 2) to Medicare Part B contractors to receive payment for dispensing prescriptions for Medicare Part B enrollees and/or 3) to Medicaid contractors to receive payment for dispensing prescriptions for Medicaid enrollees. Kmart receives money originating from the United States Government as payment for dispensing prescriptions for patients who have Medicare Part B and/or Medicare Part D and/or Medicaid.  Kmart pharmacy uses a computer system named "PDX" to fill and dispense prescription medications.  PDX, introduced decades ago, automatically enters an expiration date of one-year on all prescriptions.  In contrast to Connexus, PDX does not automatically, without human intervention, bill Medicare or Medicaid for prescriptions.

26.     Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid

contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false.

27.     Pharmacy technicians and pharmacists at Kmart pharmacy, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly submit false claims to PDP Sponsors, Medicare Part B contractors, and Medicaid contractors for prescriptions dispensed with two different national drug code numbers (NDC number), an expensive drug NDC number and a cheaper NDC number; the more expensive drug is the one that is submitted as a false claim to a PDP Sponsor, Medicare Part B contractor, and/or Medicaid contractor for payment and most of the prescription, if not all of it in some cases, is filled with the cheaper drug. This process occurs at most Kmart pharmacies throughout the country.  The relator has worked at 8 different Kmart pharmacies in two different states.

28.     Pharmacists in North Carolina that engage in the activities described in the previous paragraph include Jeffrey Michael Jurek, Christopher Honeycutt, Gary

Darrk, Jeremy Hawkins, David Rappaport, Kimberly Mabe, and Davina Manuel, among others. For example, Christopher Honeycutt, pharmacy manager at the Kmart pharmacy in Burlington, North Carolina, bills PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for the most expensive test strips in a product line while ordering the cheapest test strips in a product line and dispensing the cheapest test strips to patients; this increases his bonus check. David Rappaport, former pharmacy manager at the Kmart pharmacy in High Point, North Carolina, also filled prescriptions with cheaper generic drugs while billing PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for more expensive generic drugs.

29.     Further, Sears Holding Corporation and/or Kmart pharmacy, uses two different suppliers, Cardinal and a company known as "ANDA." Sears Holding Corporation and/or Kmart pharmacy buys drugs at a deep discount through ANDA relative to Cardinal. This leads to a generic drug having two or more different suppliers on the shelf at one time. For example, you could have lisinopril 10 mg tablets from two or more different manufacturers on the shelf at one time. When this happens Lea Lilie requires pharmacists, in violation of 31 U.S.C. § 3729, to submit claims for prescriptions for the higher priced drug from Cardinal (use up the handful of tablets on the shelf of the higher priced drug) and fill the prescription with the cheaper medication from ANDA – this increases Lea Lilie's year end bonus check because it reduces the amount of drugs that have to be returned to a reverse distributor, which costs Sears Holding Corporation and/or Kmart pharmacy money.

30.     Sears Holding Corporation and/or Kmart pharmacy requires their pharmacy managers to return drugs that expire at the end of the month to a reverse distributor.  Expressed otherwise, a drug that expires on January 31 of any given year will not necessarily be removed from the pharmacy shelves until sometime in January and sometimes after January based on the records seen by the relator, often the return of these drugs occurs shortly before the end of the month of which they expire.  For example, a patient could buy a 90 days supply of medication on January 14th of that expires on January 31st.  This causes the patient to consume 72 days of expired medication.

31.     Kmart maintains records of prescription drugs sent back to its reverse distributors.  Those records record the amount of individual drugs sent back, the date they expired, and the pack size of the stock bottle.  The NDC numbers on that report can be searched in Kmart's drug database to identify prescriptions filled with those NDC numbers.  Prescription records can then be accessed to determine the date the prescription was filled, compare expiration dates and whether Medicare or Medicaid paid for that prescription.

**Facts Relating to Rite-Aid Corporation and Its Individual Subsidiaries**

32.     Since 2004, daily, and ongoing today, and at each Rite-Aid pharmacy, Rite-Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. §

3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by

submitting false claims for new prescriptions and refill prescriptions to Medicare

Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date

of one year automatically entered on all prescriptions for the purpose of satisfying

Medicare and Medicaid's requirement that prescription expiration dates be

submitted, hence the above named intended the expiration date to be material to

the above contractors' decision to pay claims, despite these pharmacy technicians

and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as

little as 30 days, in some instances, and at any given time about 15% of

manufacturer stock bottles of prescription medications expire in less than one year

at any given Rite-Aid pharmacy, hence making these submissions knowingly false;

there is at least a 15% chance that a prescription has been labeled with an incorrect

expiration date, constituting both misbranding and adulteration (the drug will have

deteriorated by the time it is used in many instances) under the Food, Drug, and

Cosmetic Act of 1938 as amended.


33.     Rite-Aid and/or its subsidiaries do not require pharmacy technicians or

pharmacists to remove, sufficiently beforehand, medications that will soon expire as

to prevent patients from receiving medications that will expire before the expiration

date on the label or from receiving medications that will expire before the patient

can consume them according to his or her doctor's instructions.  Rite-Aid maintains

records of the drugs that are sent back to its reverse distributor.  Those records

combined with its ability to search its entire records by NDC number to determine

which prescriptions used that NDC and combined with individual prescription records can be used to identify prescriptions that were filled with prescription medications that expired before the expiration date printed on the prescription label; the prescription record also indicates whether Medicare or Medicaid paid for the prescription.

34. Rite-Aid, Wal-Mart, and Kmart make money by selling prescription medications that expire before the date on the prescription label. Rite-Aid, Wal-Mart, and Kmart lose money by sending drugs that are about to expire to a reverse distributor for disposition.

35. Rite-Aid Corporation has developed for its subsidiaries use its own pharmacy software to fill and dispense prescriptions. Rite-Aid's proprietary software automatically enters a one-year expiration date on all prescriptions for medications, even prescriptions that expire in a few days or weeks such as compounded prescriptions. Further, Rite-Aid's pharmacy software has an "auto-fill" feature.

36. Rite Aid andits subsidiaries have submitted millions of claims for payment to PDP Sponsors, Medicare Part B contractors, or Medicaid contractors for prescription medications that will expire before the expiration date printed on the prescription label or expire before the patient can actually consume the medication according to his or her doctor's instructions.

**Count I**

**Wal-Mart Corporation's False Claims For Services Not Rendered In Violation of 31 U.S.C. § 3729(a)(1)(A)**

37.     Relator re-alleges and incorporates the allegations of paragraphs 1-38 as if fully set forth herein.

38.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart's pharmacy technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of false or fraudulent claims for payment or approval for providing services that were not performed.  Wal-Mart's pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.  Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

25

39.     Their knowledge of the falsity of the expiration dates is evidenced by the fact

that pharmacy technicians and pharmacists must examine manufacturer stock

bottles monthly to check expiration dates and by the fact that twice a year they must

return to one of Wal-Mart's distribution centers manufacturers stock bottles of

drugs that expire within six months to be sent to other pharmacies that will use the

medication, and conversely they received from other Wal-Mart pharmacies

medication that expired within 6 months.  It is further evidenced by the fact that

Michael Nardozzi and Abdul Kader require pharmacy technicians and pharmacists

to remove on the 15th of any given month drugs that expire **only 75 days** forward,

but allow prescriptions to be filled for 90 days supply and more; some patients

actually buy 6 months to one year of medication at a time.


40.     Over the last ten years, The United States of America Government, Medicare

PDP Sponsors, Medicare Part B contractors, and Medicaid contractors, unaware of

the falsity of the claims and/or statements, and in reliance on the accuracy thereof,

paid millions of claims submitted by Wal-Mart itself, and its pharmacy technicians

and pharmacists for prescriptions containing medications that expired either before

a patient could consume the medication or expired before the expiration date on the

label and was damaged to the extent of the dollar value of these millions of claims

and the trebled amount and the United States of America Government was damaged

to the extent it had to pay medical bills for people injured by not receiving in-date

prescription medication, for example, patients who experienced heart attacks or strokes had to receive additional medical care paid for by Medicare or Medicaid.

**Count II**

**Wal-Mart Corporation's False Claims For Services Not Rendered In Violation of 31 U.S.C. § 3729(a)(1)(B)**

41.     Relator re-alleges and incorporates the allegations of paragraphs 1-42 as if fully set forth herein.

42.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart's pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims. These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing services that were not performed. Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

**Count III**

**Wal-Mart Corporation's False Claims For Services Not Rendered In Violation of 31 U.S.C. § 3729(a)(1)(C)**

43.     Relator re-alleges and incorporates the allegations of paragraphs 1-50 as if fully set forth herein.

44.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart executives, including Michael Nardozzi, Abdul Kader, Lyndsey Cyr, and Wal-Mart's attorneys through the use of "Connexus," to increase their own annual bonus checks, violated and still violate 31 U.S.C. § 3729(a)(1)(C) by programming and allowing Connexus to automatically submit false claims for payment, without human intervention, 1) for "auto-refill" prescriptions and 2) for refill prescriptions entered directly by patients using a phone or Wal-Mart's pharmacy website to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence, the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these executives knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date,

constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended; Connexus does not have a built-in step for pharmacy technicians or pharmacists to correct incorrect expiration dates. Medicare and Medicaid require that pharmacies submit claims to comply with the Food, Drug, and Cosmetic Act of 1938 as amended. Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

**Count IV**

**Wal-Mart Corporation's False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(A)**

45.     Relator re-alleges and incorporates the allegations of paragraphs 1-54 as if fully set forth herein.

46.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart executives, including Michael Nardozzi, Abdul Kader, Lyndsey Cyr, and Wal-Mart's attorneys through the use of "Connexus," to increase their own annual bonus checks, violated

29

and still violate 31 U.S.C. § 3729(a)(1)(A) by programming and allowing Connexus

to automatically submit false claims for payment, without human intervention, 1)

for "auto-refill" prescriptions and 2) for refill prescriptions entered directly by

patients using a phone or Wal-Mart's pharmacy website to Medicare Part B

contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one

year automatically entered on all prescriptions for the purpose of satisfying

Medicare and Medicaid's requirement that prescription expiration dates be

submitted, hence, the above named intended the expiration date to be material to

the above contractors' decision to pay claims, despite these executives knowing that

Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some

instances, and at any given time about 15% of manufacturer stock bottles of

prescription medications expire in less than one year at any given Wal-Mart owned

pharmacy, hence making these submissions knowingly false; there is at least a 15%

chance that a prescription has been labeled with an incorrect expiration date,

constituting both misbranding and adulteration under the Food, Drug, and Cosmetic

Act of 1938 as amended; Connexus does not have a built-in step for pharmacy

technicians or pharmacists to correct incorrect expiration dates. Medicare and

Medicaid require that pharmacies submit claims to comply with the Food, Drug, and

Cosmetic Act of 1938 as amended. Wal-Mart billed for dispensing a 90 days supply

of medication but constructively dispensed a smaller days supply of medication

because the medication either expired before the expiration date on the

prescription label or expired before the patient could use the medication according

to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

47.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended.  Wal-Mart billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the

medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

**Count V**

**Wal-Mart Corporation's False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(B)**

48.     Relator re-alleges and incorporates the allegations of paragraphs 1-59 as if fully set forth herein.

49.     Wal-Mart's pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims.  These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing products that were not delivered.  Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

50.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(B) by

submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended.  Wal-Mart billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances

**Count VI**

**Wal-Mart Corporation's False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(C)**

51.     Relator re-alleges and incorporates the allegations of paragraphs 1-63 as if fully set forth herein.

52.     Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(C), conspired to commit millions of violations of subparagraph (A), (B), (D), (E), (F), or (G). Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of false or fraudulent claims for payment or approval for providing products that were not delivered, or in violation of 31 U.S.C. § 3729(a)(1)(B) knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims. Wal-Mart Corporation and/or Wal-Mart Corporation's pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

53.     Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare

Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended.  Wal-Mart billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances

**Count VII**

**Sears Holdings Corporation and/or Kmart's False Claims For Services Not Rendered In Violation of 31 U.S.C. § 3729(a)(1)(A)**

54.      Relator re-alleges and incorporates the allegations of paragraphs 1-67 as if fully set forth herein.

55.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy

technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly

presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors,

and/or Medicaid contractors millions of false or fraudulent claims for payment or

approval for providing services that were not performed.  Sears Holding

Corporation and/or Kmart's pharmacy technicians and pharmacists billed for the

service of dispensing a 90 days supply of medication but constructively dispensed a

smaller days supply of medication because the medication either expired before the

expiration date on the prescription label or expired before the patient could use the

medication according to his or her doctor's instructions; the constructive days

supply actually dispensed could be as little as zero days in some instances.


56.     Daily, since the introduction of PDX to the present, and ongoing today, and at

each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and

still violate 31 U.S.C. § 3729(a)(1)(A) by submitting false claims for new

prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors,

and Medicaid contractors with an expiration date of one year automatically entered

on all prescriptions for the purpose of satisfying Medicare and Medicaid's

requirement that prescription expiration dates be submitted, hence the above

named intended the expiration date to be material to the above contractors'

decision to pay claims, despite these pharmacy technicians and pharmacists

knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some

instances, and at any given time about 15% of manufacturer stock bottles of

prescription medications expire in less than one year at any given Kmart pharmacy,
hence making these submissions knowingly false; there is at least a 15% chance that
a prescription has been labeled with an incorrect expiration date, constituting both
misbranding and adulteration (the drug will have deteriorated by the time it is used
in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

57.     Sears Holding Corporation and/or Kmart do not require the removal of
prescription medication from pharmacy shelves until the actual month that it
expires.  Patients who bought a 90 days supply of a medication that expired that
very same month of its purchased received medication that they could not use
according to his or her doctor's instructions until the medication had already
expired.

58.     Over the last ten years, The United States of America Government, Medicare
PDP Sponsors, Medicare Part B contractors, and Medicaid contractors, unaware of
the falsity of the claims and/or statements, and in reliance on the accuracy thereof,
paid millions of claims submitted by Sears Holding Corporation and/or Kmart and
its pharmacy technicians and pharmacists for prescriptions containing medications
that expired either before a patient could consume the medication or expired before
the expiration date on the label and was damaged to the extent of the dollar value of
these millions of claims and the trebled amount and the United States of America
Government was damaged to the extent it had to pay medical bills for people injured
by not receiving in-date prescription medication, for example, patients who

experienced heart attacks or strokes had to receive additional medical care paid for by Medicare or Medicaid.

**Count VIII**

**Sears Holdings Corporation and/or Kmart's False Claims For Services Not Rendered In Violation of 31 U.S.C. § 3729(a)(1)(B)**

59.     Relator re-alleges and incorporates the allegations of paragraphs 1-71 as if fully set forth herein.

60.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims.  These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing services that were not performed.  Sears Holding Corporation and/or Kmart and their pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

61.     Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C § 3729(a)(1)(B) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration (the drug will have deteriorated by the time it is used in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

**Count IX**

**Sears Holdings Corporation and/or Kmart's False Claims For Services Not Rendered In Violation of 31 U.S.C. § 3729(a)(1)(C)**

62.     Relator re-alleges and incorporates the allegations of paragraphs 1-79 as if fully set forth herein.

63.     Unnamed executives, Lea Lilie R.Ph., Jeremy Hawkins R.Ph., Jeffrey Michael Jurek, R.Ph., David Rappaport, R.Ph., Garry Darrk, R.Ph., Christopher Honeycutt, R.Ph., Kimberly Mabe, R.Ph., Davina Manuel, R.Ph. and other Kmart pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(C), conspired to commit violations of subparagraph (A), (B), (D), (E), (F), or (G) by submitting claims for more expensive generic drugs while dispensing to patients cheaper generic drugs.

64.     Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that

a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration (the drug will have deteriorated by the time it is used in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

65.     Lea Lilie demanded that pharmacists submit claims for the more expensive generic drug that was on the shelf (despite there not being enough medication to completely fill the prescription) and fill the prescription with the cheaper generic drug that either arrived from Cardinal or from ANDA.

66.     Over the last ten years, The United States of America Government, Medicare PDP Sponsors, Medicare Part B contractors, and Medicaid contractors, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid millions of claims submitted by Sears Holding Corporation and/or Kmart and its pharmacy technicians and pharmacists for prescriptions that were billed for higher price generic medications while cheaper priced generic medications were actually placed in the bottle.

**Count X**

**Sears Holdings Corporation and/or Kmart's False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(A)**

67.     Relator re-alleges and incorporates the allegations of paragraphs 1-83 as if fully set forth herein.

68.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy

technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly

presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors,

and/or Medicaid contractors millions of false or fraudulent claims for payment or

approval for providing products that were not delivered.  Sears Holding Corporation

and/or Kmart's pharmacy technicians and pharmacists billed for dispensing a 90

days supply of medication but constructively dispensed a smaller days supply of

medication because the medication either expired before the expiration date on the

prescription label or expired before the patient could use the medication according

to his or her doctor's instructions; the constructive days supply actually dispensed

could be as little as zero days in some instances.


69.     Daily, since the introduction of PDX to the present, and ongoing today, and at

each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and

still violate 31 U.S.C. § 3729(a)(1)(A) by submitting false claims for new

prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors,

and Medicaid contractors with an expiration date of one year automatically entered

on all prescriptions for the purpose of satisfying Medicare and Medicaid's

requirement that prescription expiration dates be submitted, hence the above

named intended the expiration date to be material to the above contractors'

decision to pay claims, despite these pharmacy technicians and pharmacists

knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some

instances, and at any given time about 15% of manufacturer stock bottles of

prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration (the drug will have deteriorated by the time it is used in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

**Count XI**

**Sears Holdings Corporation and/or Kmart's False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(B)**

70.    Relator re-alleges and incorporates the allegations of paragraphs 1-87 as if fully set forth herein.

71.    Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims.  These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing products that were not delivered. Sears Holding Corporation and/or Kmart and their pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the

constructive days supply actually dispensed could be as little as zero days in some instances.

72.     Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C § 3729(a)(1)(B) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration (the drug will have deteriorated by the time it is used in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

**Count XII**

**Sears Holdings Corporation and/or Kmart's False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(C)**

73.     Relator re-alleges and incorporates the allegations of paragraphs 1-91 as if fully set forth herein.

74.     Sears Holding Corporation and/or Kmart pharmacy technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(C), conspired to commit millions of violations of subparagraph (A), (B), (D), (E), (F), or (G). Sears Holding Corporation and/or Kmart pharmacy technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of false or fraudulent claims for payment or approval for providing products that were not delivered, or in violation of 31 U.S.C. § 3729(a)(1)(B) knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims. Sears Holding Corporation and/or Kmart pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

75.     Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors,

and Medicaid contractors with an expiration date of one year automatically entered

on all prescriptions for the purpose of satisfying Medicare and Medicaid's

requirement that prescription expiration dates be submitted, hence the above

named intended the expiration date to be material to the above contractors'

decision to pay claims, despite these pharmacy technicians and pharmacists

knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some

instances, and at any given time about 15% of manufacturer stock bottles of

prescription medications expire in less than one year at any given Kmart pharmacy,

hence making these submissions knowingly false; there is at least a 15% chance that

a prescription has been labeled with an incorrect expiration date, constituting both

misbranding and adulteration (the drug will have deteriorated by the time it is used

in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

**Count XIII**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Services Not
Rendered In Violation of 31 U.S.C. § 3729(a)(1)(A)**

76.     Relator re-alleges and incorporates the allegations of paragraphs 1-95 as if

fully set forth herein.

77.     Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and

pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or

caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or

Medicaid contractors millions of false or fraudulent claims for payment or approval

for providing services that were not performed.  Rite-Aid Corporation and/or its

subsidiaries' pharmacy technicians and pharmacists billed for the service of

dispensing a 90 days supply of medication but constructively dispensed a smaller

days supply of medication because the medication either expired before the

expiration date on the prescription label or expired before the patient could use the

medication according to his or her doctor's instructions; the constructive days

supply actually dispensed could be as little as zero days in some instances.

78.     Since 2004, daily, and ongoing today, and at each Rite-Aid pharmacy, Rite-Aid

pharmacy technicians and pharmacists violated and still violate 31 U.S.C. §

3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by

submitting false claims for new prescriptions and refill prescriptions to Medicare

Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date

of one year automatically entered on all prescriptions for the purpose of satisfying

Medicare and Medicaid's requirement that prescription expiration dates be

submitted, hence the above named intended the expiration date to be material to

the above contractors' decision to pay claims, despite these pharmacy technicians

and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as

little as 30 days, in some instances, and at any given time about 15% of

manufacturer stock bottles of prescription medications expire in less than one year

at any given Rite-Aid pharmacy, hence making these submissions knowingly false;

there is at least a 15% chance that a prescription has been labeled with an incorrect

expiration date, constituting both misbranding and adulteration (the drug will have

deteriorated by the time it is used in many instances) under the Food, Drug, and
Cosmetic Act of 1938 as amended.

**Count XIV**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Services Not
Rendered In Violation of 31 U.S.C. § 3729(a)(1)(B)**

79.     Relator re-alleges and incorporates the allegations of paragraphs 1-99 as if
fully set forth herein.

80.     Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and
pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or
caused to be made or used, millions of false records or statements material to false
or fraudulent claims.  These false or fraudulent claims were presented to PDP
Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or
approval for providing services that were not performed.  Rite-Aid Corporation
and/or its subsidiaries pharmacy technicians and pharmacists billed for the service
of dispensing a 90 days supply of medication but constructively dispensed a smaller
days supply of medication because the medication either expired before the
expiration date on the prescription label or expired before the patient could use the
medication according to his or her doctor's instructions; the constructive days
supply actually dispensed could be as little as zero days in some instances.

81.     Since 2004, daily, and ongoing today, and at each Rite-Aid pharmacy, Rite-Aid
pharmacy technicians and pharmacists violated and still violate 31 U.S.C. §

3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by

submitting false claims for new prescriptions and refill prescriptions to Medicare

Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date

of one year automatically entered on all prescriptions for the purpose of satisfying

Medicare and Medicaid's requirement that prescription expiration dates be

submitted, hence the above named intended the expiration date to be material to

the above contractors' decision to pay claims, despite these pharmacy technicians

and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as

little as 30 days, in some instances, and at any given time about 15% of

manufacturer stock bottles of prescription medications expire in less than one year

at any given Rite-Aid pharmacy, hence making these submissions knowingly false;

there is at least a 15% chance that a prescription has been labeled with an incorrect

expiration date, constituting both misbranding and adulteration (the drug will have

deteriorated by the time it is used in many instances) under the Food, Drug, and

Cosmetic Act of 1938 as amended.


**Count XV**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(A)**


82.     Relator re-alleges and incorporates the allegations of paragraphs 1-107 as if

fully set forth herein.

83.     Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and

pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or

caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or

Medicaid contractors millions of false or fraudulent claims for payment or approval

for providing products that were not delivered.  Rite-Aid Corporation and/or its

subsidiaries pharmacy technicians and pharmacists billed for a 90 days supply of

medication but constructively dispensed a smaller days supply of medication

because the medication either expired before the expiration date on the

prescription label or expired before the patient could use the medication according

to his or her doctor's instructions; the constructive days supply actually dispensed

could be as little as zero days in some instances.


84.     Since 2004, daily, and ongoing today, and at each Rite-Aid pharmacy, Rite-Aid

pharmacy technicians and pharmacists violated and still violate 31 U.S.C. §

3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by

submitting false claims for new prescriptions and refill prescriptions to Medicare

Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date

of one year automatically entered on all prescriptions for the purpose of satisfying

Medicare and Medicaid's requirement that prescription expiration dates be

submitted, hence the above named intended the expiration date to be material to

the above contractors' decision to pay claims, despite these pharmacy technicians

and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as

little as 30 days, in some instances, and at any given time about 15% of

manufacturer stock bottles of prescription medications expire in less than one year at any given Rite-Aid pharmacy, hence making these submissions knowingly false; there is at least a 15% chance that a prescription has been labeled with an incorrect expiration date, constituting both misbranding and adulteration (the drug will have deteriorated by the time it is used in many instances) under the Food, Drug, and Cosmetic Act of 1938 as amended.

**Count XVI**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Products Not Delivered In Violation of 31 U.S.C. § 3729(a)(1)(B)**

85.     Relator re-alleges and incorporates the allegations of paragraphs 1-111 as if fully set forth herein.

86.     Rite-Aid Corporation and/or its subsidiaries pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims. These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing products that were not delivered. Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication

according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

87.     Since 2004, daily, and ongoing today, and at each Rite-Aid pharmacy, Rite-Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as little as 30 days, in some instances.

## DEMAND FOR JURY TRIAL

Relator, on behalf of himself and the United States of America, demands a jury trial on all claims alleged herein.

Dated: April 8 th, 2013          Signed _____
                                 William Verrinder
                                 P.O. Box 2071
                                 Lewiston, ME. 04241