IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Boston Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *Ex rel* | ) | |
| William Verrinder | ) | Civil Action No. 13-11147-PBS |
| | | Original 2:13-cv-130-NT11 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **FILED UNDER SEAL** |
| | ) | **PURSUANT TO 31 U.S.C.** |
| | ) | **3730 (b)(2)** |
| v. | ) | |
| | 1) | |
| | ) | |
| Wal-Mart Stores Incorporated | ) | **DO NOT PLACE IN PRESS BOX** |
| 702 SW 8th Street | ) | **DO NOT ENTER ON PACER** |
| Bentonville, AR. 72716 | ) | |
| | ) | |
| Sears Holding Corporation, | ) | |
| and Kmart | ) | |
| 3333 Beverly Road | ) | |
| Hoffman Estates, IL 60179 | ) | |
| And | ) | |
| Rite-Aid Corporation | ) | |
| 30 Hunter Lane | ) | |
| Camp Hill, PA. 17011 | ) | |
| Defendants. | ) | |

AMENDED FALSE CLAIMS ACT COMPLAINT AND

DEMAND FOR JURY TRIAL

## Introduction

1.    On behalf of the United States of America, William Verrinder, relator, brings

this action against defendants for treble damages and civil penalties arising from the

defendants' false statements and false claims in violation of the False Claims Act, 31

U.S.C §§ 3729 *et seq*. This action is easy to understand: for monetary gain, Wal-Mart

executive Michael Nardozzi has decided that some Americans will take the risk of consuming expired medications.  Some prescriptions, a small percentage, are labeled with incorrect expiration dates, making this possible.  Each defendant submits false claims to Medicare and/or Medicaid, in violation of  31  U.S.C  §§ 3729 *et seq*, by dispensing and billing for prescription drugs that will expire or expired before the expiration date printed on the prescription vial that is purchased by the patient, misleading patients into believing that their prescription medications are in-date and safe to consume when in---fact they are expired (the length of time that a drug has been expired depends on several factors and the details are given below).  In addition   to expiring before the   expiration date   printed on the prescription vial, many drugs will expire before the patient can actually consume the medication according to his or her physician's directions.  The   Food, Drug, and Cosmetic Act (FDCA) of 1938 as amended, 21 U.S.C. § 301   et seq., prohibits misbranding on prescription labels and adulteration of prescription medications.  The United States Supreme Court has held that the FDCA applies to retail pharmacies, such as the defendants.  Each defendant prints false expiration dates of drugs on prescription labels, constituting both misbranding and adulteration (the drug expires and hence deteriorates before the expiration date on the label).  State laws also prohibit misbranding on prescription labels and adulteration of prescription medications.  The defendants' also violate the False Claims Act 31 U.S.C. §§ 3729-3733 on two other separate grounds. First, defendants are billing for services never received:  Prescription Drug Plan (PDP)  Sponsors and Medicaid contractors pay pharmacies a service fee based on how many days supply of

medication a patient receives; for example, they pay one fee when a pharmacy dispenses a 30 day supply of medication, a different fee for a 60 day supply of medication, and yet another different fee when a pharmacy dispenses a 90 day supply of medication (these fees are separate from the cost of the medication). By dispensing medication that expires before the patient can actually use it, the pharmacy did not provide the service of dispensing 90 days supply of medication. Second, defendants are billing for goods or products never received: when the medication expires before the expiration date or before the patient can actually use the medication then the pharmacy has not provided the good or products for which it has billed Medicare and/or Medicaid. To be exact, the defendants billed private companies that have business arrangements with Medicare Part B, Medicare Part D, and/or state Medicaid programs; and these companies in turn bill the United States Federal government for the prescriptions that they paid for to the defendant pharmacies.

2.      Pursuant to 31 U.S.C. § 3730(b)(2), the relator has submitted to the Attorney General of the United States of America and the United States Attorney for the District of Maine (forwarded to Massachusetts) a statement of all material evidence and information related to the complaint. The written disclosure statement is supported by material evidence known to the relator at filing establishing the existence of each defendant's separate false claims.

**Jurisdiction and Venue**

3.      This action arises from the False Claims Act, 31 U.S.C. § 3729 *et seq.* This

Federal Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and
3730(b). This Court has jurisdiction pursuant to 28 U.S.C.§1331 and 28 U.S.C. §
1345. Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §
1367.

4.      Wal-Mart Stores Incorporated conducts pharmacy business in this District.
Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the acts
proscribed by 31 U.S.C. § 3729 *et seq.* and complained of occurred in this District.
Rite-Aid Corporation conducts pharmacy business in this District. Venue is proper
in this District pursuant to 31 U.S.C. § 3732(a) because the acts proscribed by 31
U.S.C. § 3729 *et seq.* and complained of occurred in this District.

**Parties**

5.      William Verrinder, the relator in this case, is a citizen of the United States and
a resident of the State of Maine. From March of 2012 to January 8, 2013 relator
worked for Sears Holding Corporation as a pharmacist. From November 2008 to
January 2012 relator worked as a pharmacist in a Wal-Mart owned pharmacy.

6.      The relator is an original source of this information within the meaning of
31 U.S.C. § 3730(e)(4)(b), but states that to his knowledge the information included
here concerning defendants' False Claims Act violations has not been publicly dis-
closed. The relator does not base his knowledge on any criminal, civil or administra-

4

tive hearing, in a congressional administrative, or Government Accounting Office re-
port, hearing, audit, or investigation, or from the news media.

The relator has direct and independent knowledge of the information on which the
allegations are based. Relator has voluntarily provided the information to the Gov-
ernment before filing this action (under the False Claims Act, 31 U.S.C. § 3729 *et
seq.*), which is based on the information. Relator, by phone spoke with an agent of
the Federal Bureau of Investigation's office in Boston, MA. on April 5th 2013; relator
detailed to the agent how Wal-Mart Stores Inc., Kmart, and Rite-Aid Corporation
and its subsidiaries submit false claims for payment for dispensing prescription
medications that expired before the expiration date printed on the prescription con-
tainer and/or expired before patients could use the medication according to their
doctor's instructions; relator also explained how Kmart bills medicare part B and
medicare part D and medicaid for expensive generics while using in whole or in part
cheaper generic drugs to fill those prescriptions. Relator also by phone spoke with
an attorney in the Assistant United States Attorney General office for Vermont on
April5th 2013; again, relator detailed how Wal-Mart Stores Inc., Kmart, and Rite-
Aid Corporation and its subsidiaries submit false claims for payment for dispensing
prescription medications that expired before the expiration date printed on the pre-
scription label and/or expired before patients could use the medication according to
their doctor's instructions; relator also explained to the Assistant United States At-
torney in Vermont that Kmart bills medicare part B, medicare part D, and medicaid
for expensive generics while using in part or in whole cheaper generic drugs to fill
those prescriptions.

7.      The   United States of America Government (U.S.A.) funds Medicare and

Medicaid through the Department of Health and Human Services (HHS).  Congress

passed the Social Security Act of 1935 to provide for people over a certain age.

Later Congress amended the Social Security Act of 1935  to include Title XVIII Health

Insurance For the Aged and Disabled, 42 U.S.C. § 1395 – 1395cc   (Medicare) and to

include 42 U.S.C § 1396 *et seq*. (Medicaid).  Through  Medicare and Medicaid, the

U.S.A. federal government ultimately pays for prescriptions filled at  the   defen-

dants' pharmacies; this happens through several mechanisms.  HHS contracts with

Prescription Drug   Plan (PDP) Sponsors to administer the Medicare Part D Volun-

tary Prescription Drug Benefit Program.  Defendants submit claims to PDP Sponsors

to receive payment for dispensing prescriptions for   Medicare Part B enrollees.  HHS

contracts with private contractors to administer Medicare Part B Supplementary

Medical Insurance Benefits for the Aged and Disabled.  Defendants submit claims to

the private contractors (that handle Medicare Part B claims originating from retail

pharmacies) to receive payment for dispensing prescriptions for Medicare Part B

enrollees.  HHS contracts with state governments to administer state Medicaid pro-

grams.  State governments generally contract with private companies to process

Medicaid claims.  Defendants submit claims to these Medicaid contractors (private

companies) to receive payment for dispensing prescriptions for Medicaid enrollees.


8.      Wal-Mart Stores Incorporated  (hereafter "Wal-Mart") operates thousands of

pharmacies across the United States. Wal-Mart employs pharmacy technicians and

6

pharmacists to operate its pharmacies.  These pharmacy technicians and/or phar-

macists submit claims to Medicare PDP Sponsors for dispensing  prescriptions for

Medicare Part D enrollees.  These pharmacy technicians and pharmacists also sub-

mit claims to private contractors (that have  contracted with HHS to process claims

for Medicare Part B enrollees (hereafter "Medicare Part B contractors")) for  dis-

pensing  prescriptions to Medicare Part B enrollees.  Further, Wal-Mart's phar-

macy technicians and pharmacists submit claims to private contractors (that have

in turn contracted with state governments to process claims for Medicaid enrol-

lees) for  dispensing prescriptions to Medicaid enrollees.

9.      Sears Holding Corporation ("Sears Holding" hereafter) operates several

hundred pharmacies across various states.  These pharmacies operate under the

name of Kmart (Kmart is a wholly owned subsidiary of  Sears Holding).  Kmart

employs pharmacy technicians and pharmacists to operate its pharmacies.  These

pharmacy technicians and pharmacists submit claims to PDP Sponsors, Medicare

Part B contractors, and Medicaid contractors for  dispensing prescriptions to

Medicaid or  Medicare enrollees.

10.     Rite-Aid Corporation (Rite-Aid) operates as a shell corporation that owns

and operates other companies that operate retail pharmacies.  For example, Rite-Aid

Corporation owns and operates Rite-Aid of New York and Rite-Aid of North Caro-

lina; this pattern exists in other states where Rite-Aid Corporation conducts busi-

ness.  These separate companies do not have their own CEO, CFO, or COO; all man-

7

agement decisions are controlled through Rite-Aid Corporation.  Rite-Aid's subsidi-

aries employ pharmacy technicians and pharmacists to operate their pharmacies.

These technicians and pharmacists submit claims to PDP Sponsors, Medicare Part B

contractors, and Medicaid contractors for dispensing prescriptions to Medicaid en-

rollees or Medicare enrollees.

**Facts Relating to Wal-Mart Corporation**

11.    Expiration dates are critical to prescription medications.  Prescription

medications that are expired may not provide therapeutic value to patients and

they may actually harm patients.  One purpose of the Food, Drug, and Cosmetic Act

of 1938, as amended, is to ensure that patients knowingly receive safe and effective

medications at the moment of their use.  The definition of "effective medications"

means drugs that are not expired when patients use them, which means the correct

expiration date must be printed on the prescription label.  Because of the crucial

nature of expiration dates Medicare and Medicaid require pharmacies to submit

expiration dates for  claims to be paid: no expiration date equals no paid claim.

Hence, expiration dates are material to submitting claims to Medicare or Medicaid.

When the U.S.A. Government pays for prescription medications that expire before

patients can use them and/or before the expiration date printed on the prescrip-

tion label, then it has been defrauded by paying for products not received and

services  not rendered.


12.    Wal-Mart fills approximately 500 million prescriptions per year.  According

to IMS Health, in 2010, approximately 30% of  all prescriptions filled were billed

to either Medicare Part D or  Medicaid.  One can  infer that Wal-Mart bills about

150 million prescriptions per year to either Medicare Part D or  Medicaid.   The

total number billed to Medicare is even higher because this does  not account for

Medicare Part B.  On  average, at  each Wal-Mart pharmacy about 15% of  the

manufacturers' stock bottles expire within a year.

13.      Wal-Mart receives money originating from the United States Government as

payment for dispensing prescriptions for patients who  have Medicare Part B and/or

Medicare Part D and/or Medicaid.  Pharmacy technicians and pharmacists who

work for Wal-Mart have authority to bill Medicare Part B and/or

Medicare Part D and/or Medicaid for patients who are eligible to receive Medicare

Part B and/or  Medicare Part D and/or  Medicaid.

14.      Wal-Mart has developed its own proprietary pharmacy software that proc-

esses prescriptions and submits claims for payment under Medicare Part B and/or

Medicare Part D and/or state Medicaid programs.  Wal-Mart calls this software "Con-

nexus," ("Connects Us to our  patients").  Connexus automatically submits claims to

Medicaid and Medicare for 1) "auto---refills" (prescriptions that are due to be filled

each morning) and 2) refills entered by patients (by phone or website) while auto-

matically assigning a one year expiration date from the date filled for these refill pre-

scriptions.  Michael Nardozzi knows of and has approved of Connexus automatically

entering an expiration date of one year for prescription medications dispensed from

Wal-Mart pharmacies, even compounds that typically expire in a few days to weeks

still get the one year expiration date automatically entered (most pharmacists change these dates when necessary). Connexus submits these refills without any human being checking the validity of the expiration date against manufacturer stock bottles on the shelf to be sure they match and to shorten expiration dates submitted to Medicaid and Medicare when the manufacturer's stock bottle expires in less than one year. Michael Nardozzi, Abdul Kader, and Lyndsey Cyr have approved the submission of claims to Medicare and Medicaid without any human being checking the submitted expiration dates against the expiration dates of manufacturers' stock bottles to ensure that correct expiration dates are submitted. This speeds filling prescriptions, increases the number of prescriptions that each pharmacy can fill and sell each day, increases sales, and increases bonus checks for managers such as Michael Nardozzi, Abdul Kader, and Lyndsey Cyr. At no time in the process of filling refill prescriptions, after or before they have been billed, does Wal-Mart's filling system prompt pharmacy technicians to check or correct expiration dates. Also, pharmacists are monitored for how many times they enter the screen which would allow them to correct expiration dates, if they knew it was wrong, however, Wal- Mart's policy, approved by Michael Nardozzi, generally requires pharmacy technicians to return to the shelf stock bottles for tablets or capsules that were used to fill a prescription without showing the pharmacist. In other words, at no time in the process, are pharmacists' specifically required to check the expiration date: this would slow dispensing prescriptions, decreasing the amount of prescriptions that a pharmacy could fill, decreasing sales. The only time that pharmacists see the stock bottle is when a new drug has just entered the market and the drug's picture has not yet been uploaded to a database that shows

the picture of the tablet or capsule to pharmacists when they check the prescription.
In other words, for any type of refill, Wal-Mart's strictly controlled filling system does
not have a prompt for pharmacy technicians or pharmacists to check the expiration
date of the prescription. Wal- Mart does time each step of the filling process and rep-
rimand pharmacy technicians or pharmacists who take too long to complete any of
the steps. (Pharmacists see the manufacturer's container for prescriptions for eye-
drops, ear-drops, creams, ointments, liquids, and injections.)

15.     Daily, since the national roll-out of Connexus (2000---2001) to the present,
and ongoing today, and at each Wal-Mart pharmacy, Wal-Mart executives, including
Michael Nardozzi, Abdul Kader, Lyndsey Cyr, and Wal-Mart's attorneys through the
use of "Connexus," to increase their own annual bonus checks, violated and still vio-
late 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B), and/or 31 U.S.C. §
3729(a)(1)(C) by programming and allowing Connexus to automatically submit false
claims for payment, without human intervention, 1) for "auto-refill" prescriptions
and 2) for refill prescriptions entered directly by patients using a phone or Wal-
Mart's pharmacy website, to Medicare Part B contractors, PDP Sponsors, and Medi-
caid contractors with an expiration date of one year automatically entered on all
prescriptions for the purpose of satisfying Medicare and Medicaid's requirement
that prescription expiration dates be submitted, hence, the above named intended
the expiration date to be material to the above contractors' decision to pay claims,
despite these executives knowing that Wal-Mart pharmacies have drugs that expire
in as little as 90 days or less, in some instances, and at any given time about 15% of

manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy. Connexus does not have a prompt for pharmacy technicians or pharmacists to correct incorrect expiration dates on refills. Medicare and Medicaid require that pharmacies submit claims to comply with the Food, Drug, and Cosmetic Act of 1938 as amended. Wal-Mart, since the roll-out of Connexus, has a national and standardized system for filling prescriptions that must be followed. Further, for new prescriptions, Connexus also automatically enters an expiration date of one year.

16.     Daily, since the national roll---out of Connexus (2000---2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C.§ 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as little as 90   days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one

year at any given Wal---Mart owned pharmacy, hence making these submissions knowingly false and violating the FDCA of 1938, as amended.

17.     Wal-Mart pharmacists who have dispensed medications with expiration dates that expired before the date on the label and submitted claims for these prescriptions to Medicaid or Medicare include Jeffrey Michael Jurek, Darnell (Donnie) Williams, Heather Tucker, and Carol Cross.

18.   Different forms can be used to identify prescriptions that were filled with medications that expired in less than a year of the date they were filled but labeled with the automatic one-year expiration date.  These forms originate from multiple sources.

19.     Per  Michael Nardozzi's  instructions, by the 15th of every  month, he requires pharmacy technicians and pharmacists to examine each and every manufacturers stock bottle of  drugs and remove from drug shelves all medications that expire within "3 months".  Some pharmacies may be a full week or more behind schedule.  "3 months" is defined as the last day of two months forward.  For example, on January 15, pharmacy technicians and pharmacists remove drugs that expire on or before March 31.  From January 15 to March 31, there are not 90 days or 3 months.  Many situations exist in which patients  could take  expired drugs dispensed by a Wal-Mart pharmacy, despite the label indicating that the medication is in-date.  To give just one example, many elderly patients purchase a 90 days supply

13

of medication as encouraged by their PDP.  Elderly patients often spend a few
months or more in a nursing home to recover from surgery or other illness and then
return to their own home.  Many of these patients already have a several months
supply of medication purchased from a Wal-Mart pharmacy, but nursing homes do
not allow patients to bring these medications to their nursing home so the patient
leaves the medication at home and uses it upon leaving the nursing home; suppose
the patient's medication expired six months from the date of dispensing but the la-
bel says one year and the patient bought the medication a month before a five
month stay in a nursing home, then the patient would consume two full months of
expired medication after leaving the nursing home.  The patient may experience
health problems that they would not have had had they had good drugs.

20.     Generally, several times a year, Wal-Mart also requires its pharmacy techni-
cians and pharmacists to identify drugs (that have been identified by various non-
usage reports) that may expire on the shelf without being used.  These drugs are
returned to one of Wal-Mart's distribution centers to be used at other pharmacies.

21.     Wal-Mart's pharmacy technicians and pharmacists type prescription data
into Connexus when a patient wants a new prescription filled.  This data includes
the expiration date.  However on new prescriptions, Connexus has already entered
an expiration date of one year.

14

22.    Refills on prescriptions that have already been previously filled can enter the filling que in one of three ways. A pharmacy technician or pharmacist can enter refills through a patient's profile in Connexus and press the appropriate icon so the prescription enters filling. This first way does not have a prompt for pharmacists or pharmacy technicians to check and change the expiration date before the prescription label is printed nor does it bring up an option on the pharmacist's visual verify screen for the pharmacist to check the expiration date before finalizing the prescription. Second, patients can enter refills from home by phone or internet connection, which directly sends them into the filling que without giving anyone a chance to check the expiration date before billing. Third, as noted above, some prescriptions are set on an "autofill" program whereby the prescription is automatically billed by Connexus and then filled at specified intervals – again this option does not have a prompt to change the expiration date before the prescription label is printed and does not have a prompt for the pharmacist to check the expiration during visual verify, the last step in filling a prescription.

23.    Of utmost importance, on the pharmacist's visual verify screen of Connexus the expiration date does not appear; additionally, the expiration date does not appear of the "four-point" screen, the only other screen that a pharmacist typically sees while dispensing a prescription. The only way to change the expiration date, if a pharmacist thought of it, is to press the "F9" function key to enter another screen. However, it is official corporate policy for pharmacists not to enter this

screen (it would slow the process down too much and jeopardize profits and bonus

checks) where they could change the expiration date. Wal-Mart tracks the number

of times that a pharmacist uses the "F9" key to correct errors of any type on pre-

scriptions. This data is compiled for each store and each district.

24.      A little context, some may think that Wal---Mart's executives cannot pos-

sibly be that strict about time. Michael Nardozzi, Abdul Kader, and Lyndsey   Cyr

allow pharmacists a grand total of just over 60 seconds to complete all pharmacist

tasks associated with visual verify and four-point. During these two steps, pharma-

cists must check for many different types of interactions with a patient's other

medications, in addition to reading the prescription and making sure the pharmacy

technician typed and filled it correctly.

**Facts Relating to Sears Holding Corporation and Kmart**

25.      Kmart's pharmacy technicians and/or pharmacists submit claims to: 1) PDP

Sponsors to receive payment for dispensing prescriptions for Medicare Part D en-

rollees, and 2) to Medicare Part B contractors to receive payment for dispensing

prescriptions for Medicare Part B enrollees, and 3)  to Medicaid contractors to re-

ceive payment for dispensing prescriptions for Medicaid enrollees. Kmart receives

money originating from the United States Government as payment for dispensing

prescriptions for  patients who have Medicare Part B and/or Medicare Part D and/

or Medicaid. Kmart pharmacy uses a computer system named "PDX" to fill and dis-

pense prescription medications.  PDX, introduced decades  ago, automatically enters

an expiration date of one-year on all prescriptions.  In  contrast to Connexus, PDX

does not automatically, without human intervention, bill Medicare or  Medicaid for

prescriptions.

26.     Daily, since the introduction of  PDX to the present, and ongoing today, and at

each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and

still violate 31 U.S.C. § 3729(a)(1)(A),  31 U.S.C. § 3729(a)(1)(B), and/or 31 U.S.C. §

3729(a)(1)(C) by submitting false claims for new prescriptions and refill

prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid

contractors with an expiration date of one year entered on nearly all prescriptions

for the purpose of satisfying Medicare and Medicaid's requirement that prescription

expiration dates be submitted, hence the above named intended the expiration date

to be material to the above contractors' decision to pay claims, despite these phar-

macy technicians and pharmacists knowing that Kmart pharmacies have drugs that

expire in as little as 30 days, in some instances, and at any given time about 15% of

manufacturer stock bottles of prescription medications expire in less than one  year

at any given Kmart pharmacy, hence making these submissions knowingly false.

27.     Pharmacy technicians and pharmacists at Kmart pharmacy, in violation of

31 U.S.C. §  3729(a)(1)(A), knowingly submit false claims to PDP Sponsors, Medicare

Part B  contractors, and   Medicaid contractors for  prescriptions dispensed with two

different national drug code numbers (NDC number), an  expensive drug NDC number

17

Case 1:13-cv-11147-PBS   Document 20   Filed 08/06/13   Page 18 of 45

and a cheaper NDC number; the more expensive drug is the one that is submitted as a false claim to a PDP Sponsor, Medicare Part B contractor, and/or Medicaid contractor for payment; and, most of the prescription, if not all of it in some cases, is filled with the cheaper drug. This process occurs in at least two different states. In North Carolina, Lea Lilie demands that pharmacists mix expensive and cheap generics together with the expensive generic usually the one that was billed to a government payor.

28.    Pharmacists in North Carolina that engage in the activities described in the previous paragraph include Jeffrey Michael Jurek, Christopher Honeycutt, Gary Darrk, Jeremy Hawkins, David Rappaport, Kimberly Mabe, and Davina Manuel, among others.

29.    Further, Sears Holding Corporation and/or Kmart pharmacy, uses two different suppliers, Cardinal and a company known as "ANDA." Sears Holding Corporation and/or Kmart pharmacy buys drugs at a deep discount through ANDA relative to Cardinal. This leads to a small amount (about 30 out of hundreds) of generic drugs having two or more different suppliers on the shelf at one time. For example, you could have lisinopril 10 mg tablets from two or more different manufacturers on the shelf at one time. Often prescriptions will be billed for the higher priced drug, but some cheaper drug will be used in the prescription.

30.    Sears Holding Corporation and/or Kmart pharmacy requires their pharmacy managers to return drugs that expire at the end of the month to a reverse distributor. For example a drug that expires on January 31 of any given year will not necessarily

be removed from the pharmacy shelves until sometime in January and sometimes af-

ter January based on the records seen by the relator.  Often the return of these drugs

occurs shortly before the end of the month of which they expire.  Because of this pa-

tients may consume many weeks of expired medications.

31.     Kmart maintains records of  prescription drugs sent back to its reverse dis-

tributors.  Those records record the amount of individual drugs sent back, the date

they expired, and the pack size of the stock bottle.  The NDC numbers on that report

can be searched in Kmart's drug database to identify prescriptions filled with those

NDC numbers.  Prescription records can then be accessed to determine the date the

prescription was filled, compare expiration dates and whether Medicare or Medicaid

paid for that prescription.


**Facts Relating to Rite---Aid Corporation and Its Individual Subsidiaries**


32.     Since 2004  daily, and on-going  today, and at each Rite-Aid pharmacy, Rite-

Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. §

3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by sub-

mitting false claims for new prescriptions and refill prescriptions to Medicare Part B

contractors, PDP  Sponsors,  and   Medicaid contractors with an  expiration date of

one year automatically entered on all prescriptions for the purpose of  satisfying

Medicare and Medicaid's requirement that prescription expiration dates be submit-

ted, hence the above named intended the expiration date to be material to the above

contractors' decision to pay claims, despite these pharmacy technicians and phar-

macists knowing that Rite-Aid pharmacies have drugs that expire in as little as 30 days, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Rite-Aid pharmacy, hence making these submissions knowingly false.

33.     Rite-Aid and/or its subsidiaries do not require pharmacy technicians or pharmacists to remove, sufficiently beforehand, medications that will soon expire as to prevent patients from receiving medications that will expire before the expiration date on the label or from receiving medications that will expire before the patient can consume them according to his or her doctor's instructions. Rite-Aid maintains records of the drugs that are sent back to its reverse distributor. Those records combined with its ability to search its entire records by NDC number to determine which prescriptions used that NDC and combined with individual prescription records can be used to identify prescriptions that were filled with prescription medications that expired before the expiration date printed on the prescription label; the prescription record also indicates whether Medicare or Medicaid paid for the prescription.

34.     Rite-Aid, Wal-Mart, and Kmart make money by selling prescription medications that expire before the date on the prescription label. Rite-Aid, Wal-Mart, and Kmart lose money by sending drugs that are about to expire to a reverse distributor for disposition. They have to pay to have the drugs disposed.

35.     Rite-Aid Corporation has developed for its subsidiaries use its own pharmacy
software to fill and dispense prescriptions. Rite-Aid's proprietary software auto-
matically enters a one-year expiration date on all prescriptions for medications,
even prescriptions that expire in a few days or weeks such as compounded prescrip-
tions.

36.     Rite Aid  and its subsidiaries have submitted millions of claims for payment to
        PDP Sponsors,  Medicare Part B       contractors, and Medicaid contractors for
        prescription medications that will expire before the expiration date printed on
        the prescription label or expire before the patient can actually consume the
        medication according to his or her  doctor's instructions.

### Count I

## Wal-Mart's False Claims For Services Not Rendered In  Violation of 31   U.S.C § 3729(a)(1)(A)

37.     Relator re-alleges and incorporates the allegations of paragraphs 1-36 as if
fully set forth herein.

38.     Daily, since the national roll-out of  Connexus (2000---2001) to the present,
and continuing today, and at each Wal-Mart owned pharmacy, Wal-Mart's phar-
macy technicians and pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), know-
ingly presented, or cause to be  presented to  PDP Sponsors, Medicare Part B con-
tractors, and/or Medicaid contractors millions of  false or  fraudulent claims for
payment or approval for  providing services that were not performed.  Wal-Mart's
pharmacy technicians and pharmacists billed for the service of dispensing a  90 days

supply of medication but constructively dispensed a smaller days supply of medica-
tion because the medication either expired before the expiration date on the pre-
scription label or expired before the patient could use the medication according to
his or her doctor's instructions. Wal-Mart's pharmacy technicians and pharma-
cists billed for the service of dispensing a 90 days supply of medication but con-
structively dispensed a smaller days supply of medication because the medication
either expired before the expiration date on the prescription label or expired be-
fore the patient could use the medication according to his or her doctor's instruc-
tions.

39.    Their knowledge of the falsity of the expiration dates is evidenced by the
fact that pharmacy technicians and pharmacists must examine manufacturer stock
bottles monthly to check expiration dates.

40.    Over the last ten years, The United States of America Government, Medicare
PDP Sponsors, Medicare Part B contractors, and Medicaid contractors, unaware of
the falsity of the claims and/or statements, and in reliance on the accuracy thereof,
paid millions of claims submitted by Wal-Mart itself, and its pharmacy technicians
and pharmacists for prescriptions containing medications that expired either before
a patient could consume the medication or expired before the expiration date on the
label and was damaged to the extent of the dollar value of these millions of claims
and the trebled amount and the United States of America Government was damaged
to the extent it had to pay medical bills for people injured by not receiving in-date

prescription medication, for example, patients who experienced heart attacks or strokes had to receive additional medical care paid for by Medicare or Medicaid.

## Count II

## Wal-Mart's False Claims For Services Not Rendered In Violation of

## 31 U.S.C § 3729(a)(1)(B)

41. Relator re-alleges and incorporates the allegations o paragraphs 1-40 as if fully set forth herein.

42. Daily, since the national roll-out of Connexus (2000---2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart's pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims. These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing services that were not performed. Wal-Mart and/or Wal-Mart's pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions.

## Count III

## Wal-Mart 's False Claims For Services Not Rendered In Violation of

## 31 U.S.C § 3729(a)(1)(C)

43.     Relator re---alleges and incorporates the allegations o  paragraphs 1-42 as
if fully set forth herein.

44.     Daily, since the national roll-out of  Connexus (2000---2001) to the present,
and ongoing today, and at  each Wal-Mart owned pharmacy, Wal-Mart executives,
including Michael Nardozzi, Abdul Kader, Lyndsey Cyr, and Wal-Mart's attorneys
through the use of "Connexus," to increase their own annual  bonus checks, violated
and still violate 31 U.S.C. § 3729(a)(1)(C) by programming and allowing Connexus
to automatically submit false claims for payment, without human intervention, 1)
for  "auto---refill" prescriptions and 2)  for  refill prescriptions entered directly by
patients using a phone  or Wal-Mart's pharmacy website, to Medicare Part B con-
tractors, PDP  Sponsors and/or  Medicaid contractors with an  expiration date of
one year automatically entered on all prescriptions for  the purpose of  satisfying
Medicare and Medicaid's requirement that prescription expiration dates be submit-
ted, hence, the above named intended the expiration date to be material to the above
contractors' decision to pay claims, despite these executives knowing that Wal-Mart
pharmacies have drugs that expire in as little as 75 days or less, in some instances,
and at any given time about 15% of manufacturer stock bottles of prescription
medications expire in less than one year at any given Wal-Mart owned pharmacy,
hence making these submissions knowingly false.  Medicare and Medicaid require
that pharmacies submit claims to comply with the Food, Drug, and Cosmetic Act of
1938 as amended.  Wal---Mart Corporation and/or Wal---Mart Corporation's phar-
macy technicians and pharmacists billed for the service of dispensing a 90 days sup-
ply of medication but constructively dispensed a smaller days supply of medication

because the medication either expired before the expiration date on the prescrip-tion label or expired before the patient could use the medication according to his or her doctor's instructions.

**Count IV**

**Wal-Mart's False Claims For Products Not Delivered In Violation of 31 U.S.C § 3729(a)(1)(A)**

45.     Relator re-alleges and incorporates the allegations of paragraphs 1-44 as if fully set forth herein.

46.     Daily, since the national roll-out of Connexus (2000---2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart executives, including Michael Nardozzi, Abdul Kader, Lyndsey Cyr, and Wal-Mart's attorneys through the use of "Connexus," to increase their own annual bonus checks, violated and still violate 31 U.S.C. § 3729(a)(1)(A) by programming and allowing Connexus to automatically submit false claims for payment, without human intervention, 1) for "auto-refill" prescriptions and 2) for refill prescriptions entered directly by patients using a phone or Wal-Mart's pharmacy website to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submit-ted, hence, the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these executives knowing that Wal-Mart

pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false. There is a chance that prescriptions have been labeled with an incorrect expiration date, constituting both misbranding and adulteration under the Food, Drug, and Cosmetic Act of 1938 as amended. Medicare and Medicaid require that pharmacies submit claims to comply with the Food, Drug, and Cosmetic Act of 1938 as amended. Wal-Mart billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions.

47.     Daily, since the national roll-out of Connexus (2000---2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as

little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal---Mart owned pharmacy, hence making these submissions knowingly false.

**Count V**

**Wal-Mart's False Claims For Products Not Delivered In Violation of 31 U.S.C § 3729(a)(1)(B)**

48.    Relator re-alleges and incorporates the allegations of paragraphs 1-47 as if fully set forth herein.

49.    Wal-Mart's pharmacy technicians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims. These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing products that were not delivered. Wal-Mart's pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions.

50.    Daily, since the national roll-out of Connexus (2000-2001) to the present, and ongoing today, and at each Wal-Mart owned pharmacy, Wal-Mart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(B) by

27

submitting false claims for new prescriptions and refill prescriptions to Medicare
Part B contractors, PDP Sponsors and Medicaid contractors with an expiration
date of one year automatically entered on all prescriptions for the purpose of satis-
fying Medicare and Medicaid's requirement that prescription expiration dates be
submitted, hence the above named intended the expiration date to be material to
the above contractors' decision to pay claims, despite these pharmacy technicians
and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as
little as 75 days or less, in some instances, and at any given time about 15% of
manufacturer stock bottles of prescription medications expire in less than one year
at any given Wal-Mart owned pharmacy, hence making these submissions know-
ingly false. There is a chance that a prescription has been labeled with an incorrect
expiration date, constituting both misbranding and adulteration under the Food,
Drug, and Cosmetic Act of 1938 as amended. Wal-Mart billed for dispensing a 90
days supply of medication but constructively dispensed a smaller days supply of
medication because the medication either expired before the expiration date on
the prescription label or expired before the patient could use the medication ac-
cording to his or her doctor's instructions.

## Count VI

## Wal-Mart's False Claims For Products Not Delivered In Violation of 31 U.S.C § 3729(a)(1)(C)

51.    Relator re-alleges and incorporates the allegations o paragraphs 1-50 as if
fully set forth herein.

52.     Wal-Mart's pharmacy technicians and pharmacists, in violation of 31 U.S.C.
3729(a)(1)(C), conspired to commit millions of violations of subparagraph (A), (B),
(D), (E), (F), or (G).  Wal-Mart's pharmacy technicians and pharmacists, in violation
of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or caused to be presented to
PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of
false or fraudulent claims for payment or approval for providing products that  were
not  delivered, or in  violation of 31 U.S.C. § 3729(a)(1)(B) knowingly made, used, or
caused to be made or used, millions of  false records or statements material to false
or fraudulent claims.  Wal-Mart's pharmacy technicians and pharmacists billed for
dispensing a 90 days supply of medication but constructively dispensed a smaller
days supply of medication because the medication either expired before the expira-
tion date on   the prescription label or  expired before the patient could use  the
medication according  to his  or  her   doctor's instructions.

53.     Daily, since the national roll-out of  Connexus (2000---2001) to the present,
and ongoing today, and at  each Wal-Mart owned pharmacy, Wal-Mart pharmacy
technicians and pharmacists violated and still violate 31 U.S.C.§ 3729(a)(1)(C) by
submitting false claims for new prescriptions and refill prescriptions to Medicare
Part B contractors, PDP  Sponsors,  and Medicaid contractors with an   expiration
date of one year automatically entered on all prescriptions for the purpose of satis-
fying Medicare and Medicaid's requirement that prescription expiration dates be
submitted, hence the above named intended the expiration date to be material to
the above contractors' decision to pay claims, despite these pharmacy technicians

and pharmacists knowing that Wal-Mart pharmacies have drugs that expire in as little as 75 days or less, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Wal-Mart owned pharmacy, hence making these submissions knowingly false. Wal-Mart billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions; the constructive days supply actually dispensed could be as little as zero days in some instances.

**Count VII**

**Sears Holdings Corporation and/or Kmart's False Claims For Services Not Rendered In Violation of 31 U.S.C § 3729(a)(1)(A)**

54.     Relator re-alleges and incorporates the allegations of paragraphs 1-53 as if fully set forth herein.

55.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy technicians and pharmacists, in violation of 31 U.S.C.§ 3729(a)(1)(A), knowingly presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of false or fraudulent claims for payment or approval for providing services that were not performed. Sears Holding Corporation and/or Kmart's pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller

days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could us the medication according to his or her doctor's instructions.

56. Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C.§ 3729(a)(1)(A) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as 1 day, in some instances, and at an given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false.

57. Sears Holding Corporation and/or Kmart do not require the removal of prescription medication from pharmacy shelves until the actual month that it expires. Patients who bought a 90 days supply of a medication that expired that very same month of its purchased received medication that they could not use

according to his or her doctor's instructions until the medication had already expired.

58.     Over the last ten years, The United States of America Government, Medicare PDP Sponsors, Medicare Part B contractors, and Medicaid contractors, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid millions of claims submitted by Sears Holding Corporation and/or Kmart and its pharmacy technicians and pharmacists for prescriptions containing medications that expired either before a patient could consume the medication or expired before the expiration date on the label and was damaged to the extent of the dollar value of these millions of claims and the trebled amount and the United States of America Government was damaged to the extent it had to pay medical bills for people injured by not receiving in-date prescription medication, for example, patients who experienced heart attacks or strokes had to receive additional medical care paid for by Medicare or Medicaid.

**Count VIII**

**Sears Holdings Corporation and/or Kmart's False Claims For Services Not Rendered In   Violation of 31 U.S.C. 3729(a)(1)(B)**

59.     Relator re-alleges and incorporates the allegations o  paragraphs 1-58 as if fully set forth herein.

60.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy techni-

cians and pharmacists, in violation of 31 U.S.C § 3729(a)(1)(B), knowingly made,

used, or caused to be made or used, millions of false records or statements material

to false or fraudulent claims.  These false or fraudulent claims were presented t

PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for pay-

ment or approval for providing services that were not performed.  Sears Holding

Corporation and/or Kmart and their pharmacy technicians and pharmacists billed

for the service of dispensing a 90 days supply of medication but constructively dis-

pensed a smaller days supply of medication because the medication either expired

before the expiration date on the prescription label or expired before the patient

could use the medication according to his or her  doctor's instructions.

61.     Daily, since the introduction of  PDX to the present, and ongoing today, and at

each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and

still violate 31 U.S.C.§ 3729(a)(1)(B) by submitting false claims for new prescrip-

tions and refill prescriptions to   Medicare Part B contractors, PDP Sponsors, and

Medicaid contractors with an   expiration date of one year automatically entered on

all prescriptions for the purpose   of  satisfying Medicare and Medicaid's require-

ment that prescription expiration dates be submitted, hence the above named in-

tended the expiration date to be material to the above contractors' decision   to pay

claims, despite these pharmacy technicians and pharmacists knowing that Kmart

pharmacies have drugs that expire in as little as a few days, in some instances, and

at any given time about 15% of manufacturer stock bottles of prescription medica-

tions expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false.

**Count IX**

**Sears Holdings Corporation and/or Kmart's False Claims For Services Not Rendered In Violation of 31 U.S.C. 3729(a)(1)(C)**

62.     Relator re-alleges and incorporates the allegations of paragraphs 1-60 as if fully set forth herein.

63.     Unnamed executives, Lea Lilie R.Ph., Jeremy Hawkins R.Ph., Jeffrey Michael Jurek, R.Ph., David Rappaport, R.Ph., Garry Darrk, R.Ph., Christopher Honeycutt, R.Ph., Kimberly Mabe, R.Ph., Davina Manuel, R.Ph. and other Kmart pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(C), conspired to commit violations of subparagraph (A), (B), (D), (E), (F), or (G) by submitting claims for more expensive generic drugs while dispensing to patients cheaper generic drugs.

64.     Daily, since the introduction of PDX to the present, and ongoing today, and at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and still violate 31 U.S.C. §3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims,

despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as a few days, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Kmart pharmacy, hence making these submissions knowingly false.

65.    Lea Lilie demanded that pharmacists submit claims for the more expensive generic drug that was on the shelf (despite there not being enough medication to completely fill the prescription) and fill the prescription with the cheaper generic drug that either arrived from Cardinal or from ANDA.

66.    Over the last ten years, The United States of America Government, Medicare PDP  Sponsors,  Medicare Part B contractors, and   Medicaid contractors, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid millions of claims submitted by Sears Holding Corporation and/or Kmart and its pharmacy technicians and pharmacists for prescriptions that were billed for higher price generic medications while cheaper priced generic medications were actually  placed in the bottle.

**Count X**

**Sears Holdings Corporation and/or Kmart's False Claims For Products Not Delivered In   Violation of 31   U.S.C  § 3729(a)(1)(A)**

67.     Relator re-alleges and incorporates the allegations of paragraphs 1-66 as if
fully set forth herein.

68.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy techni-
cians and pharmacists, in violation of 31 U.S.C.§ 3729(a)(1)(A), knowingly presented,
or caused to  be  presented to  PDP Sponsors, Medicare Part B contractors, and/or
Medicaid contractors millions of false or fraudulent claims for payment or approval
for providing products that were not delivered.  Sears Holding Corporation and/or
Kmart's pharmacy technicians and pharmacists billed for dispensing a 90 days sup-
ply of medication but constructively dispensed a smaller days supply of medication
because the medication either expired before the expiration date on the prescription
label or expired before the patient could use the medication according to his or her
doctor's instructions.

69.     Daily, since the introduction of  PDX to the present, and ongoing today, and at
each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and
still violate 31 U.S.C. § 3729(a)(1)(A) by submitting false claims for new prescrip-
tions and refill prescriptions to  Medicare Part B contractors, PDP Sponsors, and
Medicaid contractors with an expiration date of one year automatically entered o
all prescriptions for  the purpose   of  satisfying Medicare and Medicaid's require-
ment that prescription expiration dates be submitted, hence the above named in-
tended the expiration date to be material to the above contractors' decision to pay
claims, despite these pharmacy technicians and pharmacists knowing that Kmart
pharmacies have drugs that expire in as little as a few day,s in some instances, and

at any given time about 15% of manufacturer stock bottles of prescription medica-
tions expire in less than one year at any given Kmart pharmacy, hence making these
submissions knowingly false.

**Count XI**

**Sears Holdings Corporation and/or Kmart's False Claims For Products Not
Delivered In   Violation of 31 U.S.C. §3729(a)(1)(B)**

70.     Relator re--alleges and incorporates the allegations o  paragraphs 1-69 as if
fully set forth herein.

71.     Sears Holding Corporation and/or Kmart and/or Kmart's pharmacy techni-
cians and pharmacists, in violation of 31 U.S.C. §3729(a)(1)(B), knowingly made,
used, or caused to be made or used, millions of false records or statements material
to false or fraudulent claims.  These false or fraudulent claims were presented to
PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for pay-
ment or approval for providing products that were not delivered.  Sears Holding
Corporation and/or Kmart and their pharmacy technicians and pharmacists billed
for dispensing a 90 days supply of medication but constructively dispensed a smaller
days supply of medication because the medication either expired before the expira-
tion date on  the prescription label or  expired before the patient could use the
medication according to his or her doctor's instructions.

72.     Daily, since the introduction of  PDX to the present, and ongoing today, and at
each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and

still violate 31 U.S.C.§ 3729(a)(1)(B) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Kmart pharmacies have drugs that expire in as little as a few days, in some instances.

## Count XII

## Sears Holdings Corporation and/or Kmart's False Claims For Products Not Delivered In Violation of 31 U.S.C. 3729(a)(1)(C)

73.    Relator re-alleges and incorporates the allegations of paragraphs 1-72 as if fully set forth herein.

74.    Sears Holding Corporation and/or Kmart pharmacy technicians and pharmacists, in violation of 31 U.S.C. §3729(a)(1)(C), conspired to commit millions of violations of subparagraph (A), (B), (D), (E), (F), or (G). Sears Holding Corporation and/or Kmart pharmacy technicians and pharmacists, in violation of 31 U.S.C.§ 3729(a)(1)(A), knowingly presented, or caused to be presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of false or fraudulent claims for payment or approval for providing products that were not delivered, or in violation of 31 U.S.C. §3729(a)(1)(B) knowingly made, used, or cause to be made or used, millions of false records or statements material to false

or fraudulent claims. Sears Holding Corporation and/or Kmart pharmacy techni-

cians and pharmacists billed for dispensing a 90 days supply of medication but con-

structively dispensed a smaller days supply of medication because the medication

either expired before the expiration date on the prescription label or expired before

the patient could use the medication according to his or her doctor's instructions.

75.     Daily, since the introduction o  PDX to the present, and ongoing  today, and

at each Kmart pharmacy, Kmart pharmacy technicians and pharmacists violated and

still violate 31 U.S.C.§ 3729(a)(1)(C) by submitting false claims for new prescrip-

tions and refill prescriptions to Medicare Part B contractors, PDP Sponsors,

and Medicaid contractors with an expiration date of one year automatically entered

on  all prescriptions for  the purpose  of  satisfying Medicare and Medicaid's re-

quirement that prescription expiration dates be submitted, hence the above named

intended the expiration date to be material to the above contractors' decision to pay

claims.

**Count XIII**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Services Not**
**Rendered In  Violation of 31  U.S.C  § 3729(a)(1)(A)**

76.     Relator re-alleges and incorporates the allegations of  paragraphs 1-75 as if

fully set forth herein.

77.     Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and

pharmacists, in violation of 31 U.S.C. § 3729(a)(1)(A), knowingly presented, or

caused  to be presented to PDP  Sponsors, Medicare Part B contractors, and/or

Medicaid contractors millions of false or fraudulent claims for payment or approval for providing services that were not performed. Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions.

78. Since 2004, daily and ongoing today and at each Rite-Aid pharmacy, Rite-Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and/or 31 U.S.C. §3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as little as 30 days, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Rite-Aid pharmacy, hence making these submissions knowingly false.

**Count XIV**

40

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Services Not Rendered In   Violation of 31 U.S.C. §3729(a)(1)(B)**

79.    Relator re-alleges and incorporates the allegations of paragraphs 1-78 as if fully set forth herein.

80.    Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and pharmacists, in violation of 31 U.S.C. §3729(a)(1)(B), knowingly made, used, or caused to be made or used, millions of false records or statements material to false or fraudulent claims.  These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing services that were not performed.  Rite-Aid Corporation and/or its subsidiaries pharmacy technicians and pharmacists billed for the service of dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of  medication because the medication either expired before the expiration date on the prescription label or  expired before the patient could use  the medication according to his or her doctor's instructions.

81.    Since 2004, daily and ongoing today and at each Rite-Aid pharmacy, Rite-Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. §3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP  Sponsors, and  Medicaid contractors with an  expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submit-

ted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as little as 30 days, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Rite-Aid pharmacy, hence making these submissions knowingly false.

**Count XV**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Products Not Delivered In Violation of 31 U.S.C. §3729(a)(1)(A)**

82.     Relator re-alleges and incorporates the allegations of paragraphs 1-81 as if fully set forth herein.

83.     Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and pharmacists, in violation of 31 U.S.C.§ 3729(a)(1)(A), knowingly presented, or cause to be presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors millions of false or fraudulent claims for payment or approval for providing products that were not delivered. Rite-Aid Corporation and/or its subsidiaries pharmacy technicians and pharmacists billed for a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions.

84. Since 2004 daily and ongoing today and at each Rite-Aid pharmacy, Rite-Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C 3729(a)(1)(B), and/or 31 U.S.C. 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as little as 30 days, in some instances, and at any given time about 15% of manufacturer stock bottles of prescription medications expire in less than one year at any given Rite-Aid pharmacy, hence making these submissions knowingly false.

**Count XVI**

**Rite-Aid Corporation and or Its Subsidiaries' False Claims For Products Not Delivered In Violation of 31 U.S.C. §3729(a)(1)(B)**

85. Relator re-alleges and incorporates the allegations of paragraphs 1-84 as if fully set forth herein.

86. Rite-Aid Corporation and/or its subsidiaries pharmacy technicians and pharmacists, in violation of 31 U.S.C. §3729(a)(1)(B), knowingly made, used, or

caused to be made or used, millions of false records or statements material to false or fraudulent claims. These false or fraudulent claims were presented to PDP Sponsors, Medicare Part B contractors, and/or Medicaid contractors for payment or approval for providing products that were not delivered. Rite-Aid Corporation and/or its subsidiaries' pharmacy technicians and pharmacists billed for dispensing a 90 days supply of medication but constructively dispensed a smaller days supply of medication because the medication either expired before the expiration date on the prescription label or expired before the patient could use the medication according to his or her doctor's instructions.

87.     Since 2004 daily and ongoing today and at each Rite-Aid pharmacy, Rite-Aid pharmacy technicians and pharmacists violated and still violate 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. §3729(a)(1)(B), and/or 31 U.S.C. § 3729(a)(1)(C) by submitting false claims for new prescriptions and refill prescriptions to Medicare Part B contractors, PDP Sponsors, and Medicaid contractors with an expiration date of one year automatically entered on all prescriptions for the purpose of satisfying Medicare and Medicaid's requirement that prescription expiration dates be submitted, hence the above named intended the expiration date to be material to the above contractors' decision to pay claims, despite these pharmacy technicians and pharmacists knowing that Rite-Aid pharmacies have drugs that expire in as little as 30 days, in some instances.

**DEMAND FOR JURY TRIAL**

Relator, on behalf of himself and the United States of America, demands a jury trial

on all claims alleged herein.

Date _____ August 6,2013 _____

_____
Signature

William Verrinder

Printed Name

PO Box 2071  Lewiston, ME 04241

Address

_____
Email

207 - 891 - 1611

Telephone